UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, a Delaware Corporation, | ) ) ) Case No. |
| Plaintiff, | ) ) Judge |
| v. | ) ) ) Magistrate Judge |
| ERIC HANSOTIA, an individual, | ) ) ) Emergency Injunctive and Equitable Relief Requested |
| Defendant. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Deere & Company ("Deere" or the "Company"), by its attorneys, brings this verified complaint against defendant Eric Hansotia ("Hansotia") seeking injunctive relief, damages, and other relief.

## NATURE OF THE ACTION

1.      For over 24 years Hansotia has been employed by Deere in a series of increasingly important positions. For at least the last eight years, Hansotia has held positions of trust at Deere, first as General Manager, John Deere Harvester Works; next as Vice President, Crop Care; and most recently as Senior Vice President, Global Harvesting. In these positions, Hansotia was responsible for developing, implementing and safeguarding detailed, competitively sensitive and highly confidential information about Deere, its products, strategy, pricing, the industry and, most importantly, how to execute Deere's strategic and tactical plans within the global harvesting market.  As described more fully below, such confidential information constitutes trade secrets as defined by the Illinois Trade Secrets Act. 765 ILCS 1065/1 *et seq.* Hansotia's last day of work at Deere was on March 11, 2013, and his employment formally ended on March 19, 2013.  On July 1, 2013, AGCO Corporation ("AGCO"), one of Deere's

primary direct competitors in the agricultural harvesting equipment market, announced that it had hired Hansotia as "Senior Vice President, Global Harvesting and Advanced Technology Solutions," a position that significantly overlaps his responsibilities at Deere.

2. Pursuant to the confidentiality agreements he executed with Deere throughout his employment, Hansotia agreed that after his employment with Deere ended he would not "use or give to others…any trade secret or confidential information belonging to [Deere] or others with whom [Deere] does business." In his position at AGCO, Hansotia cannot help but use, and will inevitably disclose, Deere's trade secrets and confidential and proprietary information in breach of his confidentiality agreements and in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. In addition, during his last four days of work, Hansotia connected portable electronic storage devices, some of which computer logs indicate contained Deere trade secrets, to his Deere computer and may have kept those devices when his employment with Deere ended. Accordingly, Deere brings this action seeking immediate injunctive relief to enjoin such misappropriation.

## PARTIES

3. Deere is a Delaware corporation registered to do business in Illinois with a principal place of business and corporate headquarters in Moline, Illinois. Deere has offices throughout the world, and distributes its products throughout the United States and the world.

4. Deere is the world's leading manufacturer of agricultural equipment. Deere's Global Harvesting division, in which Hansotia worked, manufactures farm equipment, including combines and associated equipment designed for crop harvesting and, through research and development, innovation, marketing, sales, and other corporate initiatives, has become the global market share leader in the global crop harvesting industry.

5. While employed by Deere, Hansotia resided in and was a citizen of Iowa. Hansotia, on information and belief, continues to reside and maintain a citizenship in Iowa.

6. Hansotia began employment with Deere in 1988. At the time his employment with Deere ended, he held the high-level executive position of Senior Vice President, Global Harvesting. From May 2009 until September 2012, Hansotia was Vice President, Agricultural and Turf Global Platform, Crop Care. From June 2005 until May 2009, Hansotia was General Manager at John Deere Harvester Works and had intimate knowledge of all engineering, manufacturing and factory marketing activities for Harvester Works' manufactured products. In the two most recent positions, Hansotia's responsibilities included Deere's global sales of crop care and harvesting equipment.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Deere and Hansotia are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. Venue is proper in this Court under 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to Deere's claim occurred and the damages to Deere are felt in this judicial district.

9. This Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209. Hansotia worked in Illinois for an Illinois employer, and breached fiduciary duties and his Employee Innovation and Proprietary Information Agreements (the "Agreements") in Illinois. Hansotia signed the Agreements at issue herein when he was employed by and with Deere, headquartered in Moline, Illinois, and agreed to employment with an Illinois company. Hansotia worked for Deere in Moline, Illinois. A substantial amount of the Deere trade secrets and

confidential information at issue herein were developed in Moline, Illinois and Deere's information is retained in Illinois.  Hansotia's use of portable electronic storage devices to access and retain Deere trade secrets either occurred in Illinois or involved information created and stored in Illinois.  The injuries resulting from Hansotia's conduct at issue in this litigation were and will be felt by Deere in Illinois.

## FACTS

### Deere's Business and Hansotia's Responsibilities at Deere

10. Deere is the world's leader in the production and sale of a full line of agricultural equipment.  Among other products, Deere manufactures and sells combines and associated equipment used to harvest a variety of crops.  AGCO is one of Deere's primary competitors in the global market for crop harvesting equipment, including combines and associated equipment.

11. Hansotia had been employed by Deere since 1988, and has held senior positions at the Company for at least the past eight years.  Effective July 1, 2005, Hansotia was appointed as the General Manager of the John Deere Harvester Works.  On May 1, 2009, Hansotia was promoted to Vice President, Crop Care.  Most recently, on September 1, 2012, he became the Senior Vice President, Global Harvesting, which is the position he held when his employment ended in March 2013.

12. Shortly after the commencement of his employment with Deere, Hansotia agreed:

> Except as required by my duties for [Deere], I will not use or give to others, either during or after my employment, any trade secret or confidential information belonging to the Company or others with whom the Company does business.  Examples of what may be considered as trade secrets or confidential are designs, processes, systems, computer programs, writings, *research and development information, financial data, and marketing strategies*.

*See* Employee Innovation & Proprietary Information Agreement (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit A (emphasis added). The Agreement further provided:

> Upon termination of my employment I will return to the Company all materials that relate to such trade secrets or confidential information.

*Id.*

13. Hansotia executed five additional Agreements in which he similarly agreed to maintain the confidential information and trade secrets that Deere entrusted with him, and that he "will not to use or give to others, either during or *after my employment*, any trade secret or confidential information belonging to [Deere]." *See* "Agreements," Exhibit A (emphasis added).

14. Hansotia was a highly compensated employee at Deere.

### Hansotia's Access to Deere's Confidential Information and Trade Secrets

15. As Vice President and Senior Vice President at Deere, Hansotia was entrusted with confidential, competitively sensitive information about Deere's: (a) product innovations and technological developments; (b) strategic planning; (c) manufacturing costs and profit margins; (d) marketing plans; (e) pricing and promotional programs; (f) marketing budgets; (g) business development objectives; and (h) various worldwide initiatives.

16. In his positions with Deere, Hansotia actively participated in generating, maintaining, and growing business for Deere's crop care and harvesting products throughout the world. Hansotia also was deeply involved in Deere's development of strategic business plans. In his senior position at Deere, Hansotia was given access to and had input into Deere's business and strategic plans.

**Confidential Information About Deere's Global Harvesting Activities**

17.     <u>Deere's Analysis of AGCO's Strategies</u>.  Hansotia had access to specific confidential Deere reports concerning Deere's competitors in the global harvesting market, including specifically AGCO.  These reports contain Deere's confidential analyses of its competitors' likely future activities, including product development and roll-out, geographic expansion, and similar matters.  Access to this information could allow Hansotia and AGCO to assess the accuracy of Deere's projections regarding AGCO's activities, and to tailor AGCO's activities to better compete with Deere.

18.     <u>Emissions-Related Cost Impact</u>.  Hansotia had access to, and had a significant role in developing, Deere's emissions-related cost impact and pricing strategy.  Under the EPA's "Tier IV" emissions standards, agricultural equipment manufacturers are required to undertake significant steps to reduce certain emissions.  The product innovation each company will implement, the cost of such innovation, and the impact the additional cost will have on the prices of combines and other agricultural equipment is the subject of intense competition between AGCO and Deere.  Deere's approach to meeting Tier IV requirements and the costs Deere is incurring and projecting to incur are unique to Deere.  Deere has and will continue to invest significant capital in creating and executing its Tier IV plan.  The steps each company will take to meet Tier IV standards will result in manufacturers' production costs increasing.  Accordingly, agricultural equipment manufacturers will consider a variety of strategies to address these costs, such as accepting lower profit margins, increasing sale prices, reducing production costs in other areas, and targeting other markets.  With knowledge of Deere's strategies for dealing with the increase in production costs driven by the Tier IV standards,

Hansotia and AGCO can tailor their sales and marketing strategy, as well as their product engineering efforts, to compete unfairly with Deere.

19. <u>New Product Development</u>. Hansotia had access to, and had a significant role in developing, both the business case and engineering details of certain confidential new combine products. With knowledge of engineering details for these combine products, Hansotia and AGCO could attempt to develop their own competing products, and/or to target their own products to perceived weaknesses in Deere's overall product lineup. With knowledge of the business case for these new products, Hansotia and AGCO could attempt to tailor their marketing to existing or potential Deere customers.

20. <u>New Product Schedules</u>. Hansotia also had access to, and a significant role in developing, the new product schedule for Deere's combines and related products. With advance knowledge of what products Deere plans on rolling out to the marketplace, and when, Hansotia and AGCO can tailor their own product development and rollout schedules to directly compete with Deere. By way of example, Hansotia and AGCO could prioritize development of certain of their own revisions to competing products in order to beat Deere to the marketplace on select products.

21. <u>Manufacturing Footprint Plan</u>. Hansotia had access to, and a significant role in developing, Deere's manufacturing footprint plan. This includes Deere's plans for expanding its manufacturing capabilities in certain foreign markets, beginning manufacturing activities in other markets, and localizing its supply base in foreign countries in which it manufactures combines and other products. These plans are central to Deere's strategy for competing in foreign markets, including markets in which AGCO also sells combines or other agricultural equipment.

Hansotia's knowledge of these plans would allow him and AGCO to develop AGCO's response to Deere's strategy before that strategy is publicly known.

22. <u>Precision Farming Solutions</u>. Hansotia had access to, and a significant role in developing, Deere's plan for developing and expanding its precision farming solutions. These solutions generally involve the application of GPS, telematics, and other hardware- and software-based technology to enable the customer/farmer to gather and analyze machine, production, and other information to improve yields and efficiencies. Many of these plans involve products and/or services that have not yet been introduced into the marketplace, and about which there is little or no public information. Hansotia's knowledge of these plans would allow him and AGCO to develop similar and competing products and services, and to market such products and services in competition with Deere.

23. Armed with Hansotia's knowledge of those programs and plans, AGCO could, among other things, beat Deere to the marketplace, steal business, anticipate Deere's strengths and weaknesses in the market, and render Deere's efforts and expenditures of time, money, and resources significantly less effective. All of Deere's trade secrets, including the information described in paragraphs 15 and 17-22 above, provide a great deal of value to Deere in not being known by competitors or others who could use it to Deere's detriment.

24. Indeed, AGCO, in its press release announcing Hansotia' employment, touted Hansotia's extensive career at Deere. (A copy of AGCO's press release is attached as Exhibit B.) AGCO admitted that at AGCO:

> "We are very pleased to announce that Eric Hansotia has joined our executive team," said Martin Richenhagen, Chairman, President and Chief Executive Officer of AGCO. "He will be responsible for a global team of professionals focused on the development, sales, product management and support for global harvesting equipment as well as for precision agriculture and connectivity technology for all AGCO machinery."

*Id.* Hansotia was, to a large degree, responsible for the same activities at Deere. At a minimum, he is armed with Deere's confidential information and trade secrets related to the same areas of his AGCO responsibilities.

25. Hansotia would have been denied intimate access to Deere's highly confidential, competitively sensitive information but for his position of trust and confidence with Deere and his written agreement not to use or disclose this information. Only those people in a need-to-know position at Deere, all of whom are also subject to confidentiality restrictions, are given access to such information.

### Hansotia Accesses Deere's Trade Secrets and Joins Deere's Competitor

26. March 11, 2013 was Hansotia's last day of work at Deere and his employment with Deere formally ended on March 19, 2013.

27. Deere has determined that between March 8 and March 11, 2013, Hansotia accessed several Deere documents containing confidential and trade secret information relating to some or all of the subject matters listed in paragraphs 17-22 above.

28. Deere also has determined that between March 8 and March 11, 2013, Hansotia connected electronic portable storage devices to his Deere-issued computer. Based on records available to Deere, it appears that at least some of those devices contained confidential and trade secret information relating to some or all of the subject matters listed in paragraphs 17-22 above. Deere cannot locate any of these devices in its possession, and on information and belief, Hansotia retains them to this day. Deere's investigation into Hansotia's misuse of Deere's computer systems is ongoing.

29. By way of example, the files accessed by Hansotia in his last few days at Deere included steering committee notes for major projects, summary presentations on future products

and services, acquisition target analysis and recommendations, operations overviews, and marketing analysis. Some of these files were accessed from portable electronic storage devices which may still be in Hansotia's possession. Such information constitutes trade secrets of Deere.

30. On July 1, 2013, AGCO announced that it had hired Hansotia as its Senior Vice President, Global Harvesting and Advanced Technology Solutions.

31. AGCO is an agricultural equipment manufacturer that sells products and services that compete with Deere worldwide. AGCO is one of Deere's major competitors in the global agricultural harvesting business.

32. AGCO's press release (Exhibit B hereto) demonstrates that AGCO values the knowledge that Hansotia gained at Deere, and plans to put Hansotia in a position to apply that knowledge to grow its market share and margins at Deere's expense.

### Damage to Deere as a Result of Hansotia's Employment by AGCO

33. As a direct result of Hansotia's actions, Deere has lost and will continue to lose highly confidential, competitively sensitive information if Hansotia's actions do not cease. Deere's market share is threatened. Deere has been, and continues to be, irreparably harmed and has suffered injury for which it lacks an adequate remedy at law. The irreparable injury to Deere will increase if Hansotia is not enjoined from working for AGCO.

34. As a direct result of Hansotia joining AGCO, Hansotia has put AGCO at an unfair competitive advantage over Deere. Hansotia can use for AGCO's benefit and provide to AGCO detailed information about Deere's strategic plans and initiatives. As a result, Hansotia and AGCO can use this information to design AGCO's product development, marketing and promotional plans to more effectively compete with Deere. Hansotia will inevitably use Deere confidential information and trade secrets in his new position to formulate strategies, products,

10

and tactics for AGCO based on his knowledge of Deere's strategies, unreleased products, and tactics.

35. Hansotia's actions are likely to cause harm to Deere in excess of $75,000 if not enjoined. Lost business opportunities will deprive Deere of more than $75,000 in revenue.

### **Deere's Measures to Protect Its Confidential Information and Trade Secrets**

36. Deere has taken and continues to take reasonable measures to protect its confidential information and trade secrets, including the trade secrets described in paragraphs 17-22 above. Hansotia had a laptop computer issued by Deere. Deere laptops are encrypted and password-protected to prevent unauthorized access to Deere's confidential information and trade secrets. In order to access a Deere laptop, the employee has to enter two login identifications and passwords – one for the hard drive encryption and the second for access to Windows and certain business applications. Information located on Deere's servers, other than information available to the general public through Deere's public web sites, can be accessed only through Deere-issued computers that are password-protected.

37. Confidential information that is sent by email outside of Deere is sent by encrypted email, which requires a login and password in order to view the email. A recipient of a confidential email would have a limited ability to forward the email.

38. Deere has firewalls set up in such a way that the internal servers are protected and separated from external data, such as a website. The firewalls are audited by an external company.

39. Deere also has strict policies for how to handle confidential and trade secret information. Employees are required to sign confidentiality agreements. Deere strictly prohibits unauthorized disclosure of such information, as explained in Deere's Code of Business Conduct

and Global Information Classification Policy. Deere's policies regarding confidential information are available online for employees and electronic training is conducted periodically.

40. In addition, electronic training is conducted periodically regarding Deere's policies and Code of Business Conduct, and employees, including Hansotia, are asked to provide a certification of compliance with Deere's Code of Business Conduct. Hansotia certified that he read, understood, and would comply with Deere's Code of Business Conduct annually, and provided such a certification as recently as August 21, 2012.

41. Deere utilizes shredders to dispose of hard copies of confidential documents and employees are frequently reminded of Deere's confidentiality expectations.

42. The trade secret information that Hansotia has and which he will inevitably disclose, including the information described in paragraphs 17-22 above, was only provided to Hansotia and a limited and select group of others who had agreements to maintain the confidentiality of such information. Such information was disseminated only to a limited number of executives and engineers on a need-to-know basis. All of such individuals, including Hansotia, had contractual, fiduciary and statutory duties to maintain the confidentiality of such information.

43. Shortly after his employment ended, Hansotia was reminded of his confidentiality obligations by a letter sent by Deere to Hansotia's attorney.

## COUNT I

## Misappropriation of Trade Secrets

44. Deere realleges and incorporates by reference the allegations in Paragraphs 1 through 43.

45. Deere's confidential information constitutes trade secrets as defined by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

46. Such information was obtained by Hansotia during and as a result of his employment with Deere, and while Hansotia was subject to a contractual confidentiality agreement, as well as fiduciary duties to maintain such information in confidence, and, as such, he was under a duty to maintain its secrecy.

47. Hansotia has misappropriated Deere's trade secret information. As alleged above, Hansotia removed Deere's trade secret information on portable media devices without authorization or approval. Hansotia has failed to return that information despite the clear requirements of the Employee Innovation & Proprietary Information Agreements between him and Deere. (*See* Ex. A.)

48. Hansotia has threatened misappropriation of the information by his inevitable disclosure of the trade secrets for AGCO's competitive advantage and to the detriment of Deere. Hansotia's conduct violates the Illinois Trade Secrets Act. Hansotia has disclosed or used or will inevitably disclose and use Deere's trade secrets for the benefit of AGCO.

49. Hansotia's reported position of Senior Vice President, Global Harvesting and Advanced Technology Solutions substantially overlaps his responsibilities at Deere. In that capacity for AGCO, it is inevitable that he will use and disclose Deere's trade secrets in the performance of his duties and for the benefit of AGCO, even if he were to make good faith attempts to avoid using such trade secrets.

50. Unless Hansotia is enjoined from using and disclosing Deere's trade secrets, Deere will suffer severe and incalculable disadvantages in its future relationship with its authorized dealers and other businesses, in competing with AGCO, maintaining its market share and customer base and in keeping its prized trade secret information confidential.

51. Hansotia's conduct also will irreparably harm Deere and unless injunctive relief is granted Deere will suffer further irreparable injury.

52. Deere does not have an adequate remedy at law.

53. Hansotia's misappropriation has been and continues to be willful and malicious.

## COUNT II

### Breach of Contract

54. Deere realleges and incorporates by reference the allegations in Paragraphs 1 through 53.

55. The Agreements (*see* Ex. A) are valid and binding contracts supported by consideration.

56. Under the Agreements, Hansotia agreed that he "will not use or give to others, either during or after my employment, any trade secret or confidential information belonging to the Company" including "research and development information, financial data, and marketing strategies." Exhibit A. Hansotia also agreed that he would return to Deere all materials that relate to trade secrets and confidential information. *Id*.

57. Hansotia breached these obligations under the Agreements by not returning portable electronic storage devices containing Deere trade secrets and by becoming employed by AGCO as Senior Vice President, Global Harvesting and Advanced Technology Solutions.

58. Hansotia has also anticipatorily breached his obligations under the Agreements by accepting employment with AGCO in a position where his disclosure of Deere's trade secrets and confidential information to AGCO is inevitable.

59. Deere has performed each and every obligation required of it under the Agreements.

60. Deere has been injured and will continue to be injured due to Hansotia's breach.

## COUNT III

### Breach of Fiduciary Duty

61. Deere realleges and incorporates by reference the allegations in Paragraphs 1 through 60.

62. As an employee of Deere, Hansotia owed certain fiduciary duties to Deere, including, without limitation, the fiduciary duties of loyalty, care, and good faith.

63. In breach of these fiduciary duties, Hansotia misappropriated Deere's confidential information for the benefit of himself and deprived Deere of Hansotia's loyal services.

64. Unless enjoined, Hansotia's unlawful acts will materially and irreparably injure Deere's business in a manner that cannot be adequately compensated in money damages. Deere will unfairly and unlawfully lose the competitive advantages that it enjoys as a result of its confidential information and suffer further damage to its goodwill and the loss of actual prospective customers.

WHEREFORE, Deere requests that the Court enter a judgment in Deere's favor and against Hansotia and provide Deere the following relief:

A. Order, adjudge and decree that Hansotia has materially breached his Agreements with Deere and the fiduciary and other duties of loyalty, good faith, and confidence that he owed to Deere;

B. Order, adjudge, and declare that Hansotia has misappropriated or threatened to misappropriate Deere's trade secrets;

C. Temporarily, preliminarily and permanently restrain and enjoin Hansotia from participating in or being engaged directly or indirectly as an owner, partner, director, shareholder, investor, consultant, agent, employee, co-venturer, or

        otherwise for AGCO for a period of twenty-four months from the date of the injunction;

D.    Temporarily, preliminarily, and permanently restrain and enjoin Hansotia from disclosing and using Deere's confidential information or trade secrets;

E.    Direct Hansotia to return all property of Deere, including confidential information and trade secrets, in his possession, custody or control including, specifically, all such information on portable electronic storage devices; and

F.    Award such other relief to Deere from Hansotia as Deere requests and the Court deems appropriate and just.

Dated:   July 16, 2013                      Respectfully submitted,

                                                  DEERE & COMPANY,
                                                  Plaintiff,

                                                  /s/ John P. Morrison
                                                One of Its Attorneys

John P. Morrison Bar Number: 6183336
Joseph C. Wylie II Bar Number: 6270852
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: (312) 372-1121/ Facsimile: (312) 827-8000

## VERIFICATION

I, Max A. Guinn, am Senior Vice President, Human Resources, Communications, Public Affairs and Labor Relations for Deere & Company. As provided by 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing representations set forth in paragraphs 1-64 of the Verified Complaint for Injunctive and Other Relief are true and correct.

Dated: 16 Jul 13

_____